The next case on the call today is Agenda No. 8, No. 130509, Candace Martin, etc., v. Goodrich Corp., etc. In this matter, I am told that the plaintiff, Applee, will be splitting the time 13 minutes for Mr. Eaton, 7 minutes for Ms. Brown, and obviously the appellants will have the entire 20 minutes. And I think the clocks are set appropriately for that. You may begin, Counsel. May it please the Court, I'm Timothy Coughlin, and with my co-counsel, Dan McGrath, represent the defendants, Goodrich Corp. and Polly Wunf, now known as Avian. I'm surprised the scholars have left because of the constitutionality of the issues involved in this case. For over 125 years, this Court has had to consistently remind the Illinois legislature again and again that no matter how noble their thought, no matter how just their action that they think, no matter what evil they believe that they are correcting, they cannot take away the vested accrued rights of parties. And that's what brings us here. We have three questions certified to this Court and accepted from the Seventh Circuit. The first is whether Section 1F of the ODA is a statute of repose and therefore would fit under the Exception 1.1 to apply. Now, in light of this Court's language and analysis in FOLTA, in light of the three appellate court cases that find Section 1F to be a condition of precedent, and in light of the actual language of 6C, that the Court has decided is a statute of repose and the difference between that and 1F, we would ask that this Court answer the first question, no. The second question is if Section 1F falls under the 1.1 exception, what is the temporal relationship of the 1.1 exception? And to that effect, what is the impact of Section 4 of the statute on statutes? And as the Seventh Circuit has said, if Section 4 applies, then Exception 1.1 does not apply to this case. And therefore, we would ask this Court to find that the temporal relationship, as even conceded by the plaintiff, is that it is prospective, meaning it cannot touch accrued vested rights. And therefore, Section 4 and its application would again render this case to be reversed. Well, the certified question to be answered would be that Exception 1.1 does not apply. Counsel, you're talking about vested rights, and I wonder how that argument, how we need to look at that considering the analysis in Perry, which rejects vested rights. The argument in Perry has to do with the modified Landgraf analysis, which prior to this Court's pronouncement in Perry and some other cases, there was a two-step process under Landgraf. And with Perry in 2018, this Court has said you rarely reach that second element of Landgraf, being vested rights. You then need to look at, is the statute on its face retroactive, which the legislature knows how to do, or prospective? But that doesn't end the inquiry because you have to look at, what it says is, if it doesn't say on its face, you have to look at Section 4. Well, the language of Section 4 is explicit. And as this Court actually remarked in People Be Glistened, Section 4 prohibits retroactive application of statutory changes that affect substantive changes of vested rights. It's in the statute. Basically, what Perry was saying is, we already have a vested rights issue. We have Section 4. You have to look at what Section 4 does. It isn't merely procedural can be retroactive, substantive has to be prospective only. The question is, what does prospective mean? And in this case, as Glisten pointed out, Section 4 does not allow a new statute to impact accrued vested rights in any way. That's the plain language of the statute. And so I think Perry was recognizing that the vested rights analysis from Landgraf is superfluous because it already exists in Illinois law, and it has since 1895. Section 4 of the Statute on Statutes has existed untouched by the Illinois legislature since the 1800s. May we go? There are many issues here, obviously. But what is the vested right that you described? There are two vested rights. The first vested right is obviously Section 1 or Section 1F. And that is – And what right is that? What is that right? There was a statute. We understand there's been an amendment of the statute. What right does the Goodrich Corporation have that has been taken away? after 1976, no claim in any court or regulatory body could be brought as a result of the exposures that were claimed between 1966 and 1974. Why can't the legislature amend the statute? Legislature does it all the time. Legislatures can amend statutes. But the case law, again, is legion in this state that you cannot take away a right that has accrued.  What is the right? What is the right? There's a statutory scheme, and it existed for a long time, and then the legislature changes the statutory scheme. I really want to focus on the word right. What does that mean? That you had a right to rely on the system as it was earlier drafted by the legislature? Do you have a right to do that? The employer here has a right to rely on the defenses that accrued as a result of the statutory scheme in 1976. And the legislature can't change that? It cannot take away an accrued right. Section 4 is clear on that, as is the diocesan case with regard to likening it to statutes of repose. You can't take away a right, whether it's a defendant's right or a plaintiff's right, to bring a cause of action that has accrued. And here, those rights accrued when the allegations, or here the alleged exposures, ended in 1974. 1F ran in 1976, and therefore in 1976, Goodrich enjoyed the right of knowing that it could never be sued or a claim brought on behalf of those exposures that are claimed in this litigation. So is that the basis for your argument that we will be looking at a violation of due process? As to the third question, if the court gets that far, that is the due process argument. And with regards to the plaintiff and intervener in this case say, well, wait a minute, the right to the exclusive remedy, that didn't vest. That didn't vest until a claim was brought. Well, the shield does not presuppose the existence of the sword. It isn't dependent on the existence of the sword. The shield exists all along. As this court found in Wilson v. Allstate, where claimants, because of the administrative delay, their claim was barred under a 180-day provision. Well, the legislature then said, well, we'll create another cause of action. We'll give you a civil remedy after the 180 days of it. And this court said you can't do that, that that violates Section 4. You took away an accrued right, and you have breathed life back into a time-barred claim. Now, what the plaintiff says is, well, we're not taking away that statute of repose, if that's what this court finds it is in 1F. That's still there. Well, that's now a paper tiger. It is an absolute nullity under the grand bargain. The grand bargain for the workers' comp statutes was to be a balanced act between the rights given up by plaintiffs, employees, and by employers. Well, the legislature not only put its thumb on the scale, it took the scale away under 1F. And if this court is to find the 1.1 exception, if this court is to find that 1F is a statute of repose, despite the stark difference in language between 6C that this court analyzed in Fulton and 1F, then at bottom, almost every single ODA claim will become a civil action. Senator, your theory, there is no way that the General Assembly can rectify what it deems to be a manifest injustice, where the thumb and maybe the whole hand was on the employer's side of the scale in this circumstance. In terms of when rights and defenses are vested, it cannot. The precedent is 125-plus years in this court that the legislature cannot. It can do it prospectively to those exposures, but it can't when statutes of repose, statutes of limitation have run. You can't take away that vested right of that party because to do so does offend the due process rights. Could we turn to the temporal question? I think you're raising that here. What does it – how do you interpret how this statute is to run, how the statute on statutes affects this? Well – My real question is, is it – could the statute mean that after the passage, the effective date, that any exposure after that date, that anyone who develops – becomes disabled, has an injury beyond two years, could bring a cause of action in the circuit court? Is that the prospective nature of it? Where the 1F – if this court is to find that 1F is a statute of repose rather than a condition proceeding, then to the extent that that statute of repose has not run, there's no vested right in that. So the legislature can affect that. It's not taking away a vested right. So – I'm moving on beyond what – because time is limited. Let's just talk about the temporal time, the statute on statute. What does the statute mean about – what does prospective mean? What does it mean? Well, in terms of prospective application, it is not merely, oh, the statute passed on day one, the lawsuit is filed on day five. That's not prospective application. Because under GLSEN, it means, as the statute says, that prospective is on a case-by-case basis, that you cannot reach back in time and take away somebody's accrued right. There will be people who – where employers can now insure against that liability. These – this exposure ended in 1974. There's no way to insure against that. That's 40-some years ago that this happened. And so when we look at the temporal issue, there are people that the legislature can impact prospectively, depending upon whether a right is being taken away. So the temporal piece. Your understanding, your argument is that someone who was exposed in, you know, whatever, 1980, and five years later became ill, they were barred from bringing a cause of action, and that your understanding of the statute is now, all these years later, they now can bring a cause of action. That's how you understand the statute to work? That's exactly what's happening in this case. So that's how you understand the statute to work? Exactly. That's – that was the intent. That is what was testified to in front of the Illinois legislature, and that's what the legislature did. Now, as we've submitted the legislative history, it was clear they were trying to impact the 25-year asbestos statute of repose in 6C. And – but what plaintiff is asking for to make 1F a statute of repose, where all of the testimony and arguments in front of the legislature was, well, if somebody gets cancer or mesothelioma from an asbestos exposure 24 years after the last one, that's under the ODA. That's what was told to the legislature. That's not what is being argued here. That's why, if this court finds 1F to be a statute of repose, literally almost every single ODA claim becomes a civil case to be filed, and employers have no longer any protection. So what is 1F? 1F is a condition, proceeding, or temporal limitation that acts in conjunction with 6C, as this court said. I don't know if I understand those words. I mean, obviously we've got to figure out the statute talks about – what is it? Repose, provision, and I think it says statute of repose, too. So what do those words mean? Well, if we were to look at Section 6C in this case, thrice it used the phrase, the right to file such application shall be barred upon the running of the time, whether it was for a coal miner, whether it was for radiologic injury, whether it was for asbestos. So the legislature knew how to do a statute of repose. So just – please have – I've got a lot of issues here. I'm sorry. So how do you interpret the language of 1F that is exposure, not disability, it's not a cruel cause of action, but exposure, and then a time after which a claim cannot be brought, right? So why isn't that a statute of repose? Well, it says – it actually says no compensation is allowable. Now, under the code there's compensation and there's medical benefits, but the statute speaks to no compensation shall be payable unless the disablement happens two years after the last day of last exposure. Right. So there's exposure, whether there's a cause of action accrues or not, and a final date after which there cannot be compensation, right? Why isn't that a statute of repose? Well, as the Dickinson court looked at, that that operates in conjunction with 6C, that the two things have to happen together. And the language in 6C is clear. It's a statute of repose, that no claim, no right to file such application is allowed. That is not what is the language of 1F. They are distinctly different. So how are they supposed to work in your view? You say that we shouldn't analyze 1F on its own. We have to analyze it in the context of 6C. How do you see those two working? So in 6C and 1F, if there is an exposure and the claim manifests, then in 6C you have to file within three years of the manifestation. But that's not 1F. No, that's how 1F and 6C work together. I understand, and this is why the Seventh Circuit was perplexed also. You have two different statutes. Sylvester from this court says you have to read the statutes in conjunction, and you can't do so to get an absurd result. And to say that 1F is a statute of repose, it gets rid of the 25-year statute of repose in 6C. It gets rid of the coal miner statute of repose in 6C. It wipes that slate clean and now makes those all civil claims. That is an absurd result and violates the balancing act that is the workers' compensation statutes. Well, it would still limit a choice one or the other. It wouldn't say you could have technically gotten compensation or medical benefits under the ODA and still done a civil claim. Doesn't it speak directly to Justice Freeman's dissent in FOLTA about a claim that's just not compensable under the act? Well, that question is under the Mirabri four exceptions. And looking at section 4, that it is the type of injury that is compensable. You just didn't bring it in time. Well, you just didn't manifest. If you aren't sick within the time frame, it can't be brought. So the time frame then becomes critical under your question. Is it now just three years? If it didn't manifest in three years, you have a civil claim. Even though the 25 years hasn't run under 6C for an asbestos-related disease or the time period for cold pneumoconiosis hasn't run, that if you say 1F is a statute of repose, then the floodgates do open because every asbestos claim after three years is a civil claim. Outside of perhaps an acute exposure to something that may cause immediate lung injury, I can't think of something that is not going to then end up as a civil claim. Counsel, may you please bring your remarks to a close? Thank you. Counsel for the appellant, 13 minutes. Good morning, Your Honors. Tim Eaton on behalf of Candace Martin, the plaintiff in this case, the executor of the estate of her husband, Rodney Martin. Your Honors, I was here nine years ago arguing the Fulta case. In that opinion, the court said that it was the exclusivity provisions, which counsel barely mentioned, that took away Mr. Fulta's right to pursue his action. And the exclusivity provisions are simply a remedy that says you cannot file a civil claim when you have a claim under the Act. I'm glad counsel brought up the grand bargain because the grand bargain when workers' comp was established was that the worker would be protected because he could claim under a no-fault regime, and this was meant to be a remedial statute. And the employer would have certain time limitations and certain waivers in terms of civil claims because the reason the exclusivity provision is there, and this was stated in the Collier case by this court, was to prevent a proliferation of litigation and double recovery. They were saying, if you have a claim under the Act, then you shouldn't be able to file a civil claim. Well, in Fulta and in Martin, the case before you, the plaintiff has no claim under the Act because of the statute of repose provisions. So what Fulta did was ask the legislature, if we're going to have a different balance here in terms of what the plaintiff gets and what the defendant gets, it's up to you to make that balance. Well, that's exactly what they did. In this Amendment 1.1, it would have benefited Mr. Fulta, but it doesn't, because it wasn't in effect at that time, but it does affect Mr. Martin. And what it says, basically, is if you have any injury, any injury, not just asbestos, counsel keeps saying they were on the deal with asbestos, they were not. The Fulta briefs, I wrote it for the plaintiff, was talking about both 1F and 6C. You can read it. The appellate court opinion talked about both 1F and 6C as being temporal limitations. So they responded to the Fulta decision and they addressed 1F or any repose period. And, in fact, they used the word any injury, which could be asbestos, could be vinyl chloride, which we have here, or any period of repose or repose provision that cuts off their action. The legislature is waiving the provisions, the exclusivity provision. That's all they're doing. They're not setting the new cause of action. They're not creating new duties. They're simply waiving the exclusivity provision because going back to the grand bargain, under those circumstances, the worker gets a recovery. If he's barred from getting a recovery under the Act, then he is allowed to get a recovery in a civil lawsuit. That was the grand bargain. And counsel keeps saying, well, I have a vested right in this exclusivity provision, which he rarely mentioned when Chief Justice Tice was asking, well, what is the vested right you're talking about? We're talking about whether or not you can have a civil claim when you have a claim under the Act. That's what we're talking about. And this Court said, because of the exclusivity provision in FOLTA, there was no right to a civil claim. Legislature responded, struck a balance that goes back to the grand bargain and allows the worker to have a claim. That's all that we're dealing with here, is the right to have a claim. What is the proper balance? So the argument, obviously, is floodgates. We're talking about exposure 30 years ago.  For every kind of occupational hazard. Everyone will be able to file lawsuits. Many people will be able to file lawsuits. And the employers, now outside of the scope of the grand bargain, don't have insurance for all of that. And so, therefore, this injustice would occur where people would be filing lawsuits years and years and years later and there's no insurance to cover that because it wasn't anticipated. So, Your Honor, you're raising policy reasons which this Court said in FOLTA belongs in the legislature, not here. And, first of all, it's pure speculation that after 30, 40, 50 years, that there's going to be this floodgates of claims filed either under asbestos or vinyl chloride, which has a much longer period of manifestation, except in this case. That's a legislative function. They're the ones who created this remedial act. They're the ones who decided the proper balance under these circumstances where the plaintiff does not have a claim under the act, can have a claim in civil court, can have a cause of action in civil court. And the nub of counsel's argument, and I want to get real quick to what that is, but the nub of his argument is, well, you can't do that because we have a vested right. And, Mr. Justice, you ask, well, what is that? Well, the answer is we have a vested right. The minute they say this in the briefs, the threshold of the factory, we have a vested right in an affirmative defense of exclusivity. If you look at the case law, the affirmative defense under exclusivity does not happen until the plaintiff has an accrued cause of action that he can file in a civil court, and then that affirmative defense can be raised. At that point, it does not vest prior to that point. It cannot vest before the cause of action accrues, which in this case it did not accrue until after the effective date of the amendment. Counsel is just wrong in saying that there is a vested right in an affirmative defense which may not even be raised. As this court said in Doyle v. Rhodes, when they were looking at whether there could be a contribution act filed in a workers' comp case, the court said if the employer waives that right, then of course there could be a civil action and there can be a contribution. It's not until the employer is subject to liability. Were there words in Doyle v. Rhodes, subject to liability, and that requires a cause of action that is accrued, and in this case it did not accrue. So what he's doing is saying that this defense, which I can't raise until later and may never raise, gave me a vested right. It doesn't make any sense if you look at it. And I'd like to respond real quickly. I'll show you how, because I know I have a little bit of time, and counsel for the attorney general is going to address the constitutionality issue, so I'm going to cover the temporal reach and the issue of whether one has a statute of limits. Again, Chief Justice, you asked, well, what is 1F if it's not a statute of limits? Well, it is. This court in Ferguson said there are two criteria that you look at to determine a statute of limits. One, it runs from an event, which is not when the cause of action accrues, in this case exposure, and it's cut off after a certain number of years whether the cause of action has accrued or not. It's over. That's what 1F is. It starts, the clock starts running, according to the Seventh Circuit, the clock starts running at the time of exposure, and it stops whether there's been a cause of action accrued or not. That is a statute of opposed. And that's how, even though this court may in Folter have said, well, that's a temporal limitation, this court was focused on 6C because that was an asbestos case. The fact that it called it a temporal limitation is irrelevant. The effect, which this court pointed out in Ferguson, how does it operate? And just because in Folter an apple may have been called a fruit doesn't mean it's no longer an apple. That's what we're dealing with here. We're talking about labels. They don't matter. How does it impact? And that's the question. And it cuts off a right before a cause of action accrues. So 1F, without a doubt, is a statute of opposed, so this amendment applies. In terms of temporal limitations, that is perspective. The only thing the counsel raises, well, we disagree. They agree it's perspective because it doesn't apply to a cause of action that is accrued. But they say, well, it can't be perspective because we have this vested right in an affirmative defense, which we may or may not raise later, and which doesn't come into existence until we're subject to liability. As I said before, that is not a vested right. So if you take the vested right component out of it, the temporal limitation is clearly perspective only because under existing case law it says if the legislature does not state what the temporal limitation is, it's deemed perspective, and that's what Section 4 says as well. If you take those two into account, the temporal limitation is simply that. It is something that does not affect anything prior to it. If there was a vested interest, it might have some impact. In the affirmative defense, which counsel is saying. But it doesn't in this case. So the temporal limitation is actually perspective only, and 1F is clearly a statute of repose whether it's called such or not. And I don't think FOLTA was making a distinction between 6C and 1F because 1F was involved in FOLTA, as I said earlier. It was in the briefing. This court referenced it in footnote number two in FOLTA. This is what we have to address. So there was no suggestion there shouldn't have been, but somehow that was an unimportant provision in the FOLTA opinion. So in closing, Your Honor, we believe the answer to number one is yes, clearly. The legislature intended 1F to be a statute of repose under the period of repose and proposed provision language in 1F. And secondly, the temporal limitation is perspective only. It does not apply to any causes of action that have occurred. It does not apply to anything that was vested prior to that time. Thank you. Good morning, Your Honors, and may it please the Court. I'm Assistant Attorney General Megan Brown, and I represent the intervener at the League, Attorney General Kwame Raoul. Assuming this Court answers the first two certified questions in Martin's favor, the answer to the third certified question is no. The Workers' Occupational Diseases Act, as amended, does not deprive defendants, like the employers in this case, of any vested right under the Act. In order to show that Section 1.1 of the Act is unconstitutional as applied to them, defendants must show that the Act deprives them of a property interest under Illinois law. And under Illinois law, certain interests that are complete and unconditional can be equated to a property right. Once these interests are perfected, they are known as vested rights. We believe the constitutional question in this case will be answered by determining if defendants' interest in exclusive remedy defense was vested before the statute was amended. And our position is that it did not. Defendants' interest in the exclusive remedy provisions of the Act never vested because the employer's interest in their defense was not complete and unconditional. As we stated in our brief, typically defendants' interests in their affirmative defenses and a plaintiff's interest in their cause of action are treated similarly under Illinois law. And there are additional reasons why in the Workers' Occupational Diseases Act context and in the exclusive remedy context, the employer should not have had an expectation that they would never be brought into civil litigation. That's because, as this Court has stated numerous times, an employer's potential for tort liability exists unless and until the defense is asserted and proved. And also, as discussed in Fulta and in Mirbrae, there have always been exceptions to the exclusive remedy provisions of this Act. So in a case like this one where a timing provision of the Act barred a claimant from coming forward in the Occupational Diseases Act context, one would be expected to have them go into the civil case and then have the defendants litigate their affirmative defenses. Additionally, the context of the exclusive remedy defense sort of presumes that there is an injury to be remedied. And it would seem odd for this Court to hold that a defendant has a property interest and a specific remedy for a plaintiff when that plaintiff has not yet been injured. So I'd like to turn to an argument that my counsel on the other side said earlier, which is that interpreting the Act in this way and holding that Section 1.1 is constitutional in the context of this case would make Section 1F a paper tiger. Respectfully, we disagree. Section 1F is still in effect and is protecting employers like Goodrich to this day. The Workers' Occupational Diseases Act is a part of the workers' compensation system here in Illinois, and under the workers' compensation system, defendants can be held liable when they don't have any fault. So even if there was no breach of duty, even if they didn't do anything wrong, they can still be liable to pay for the injuries of their employees. In this case, plaintiff Martin will have to go into civil court, and the benefit of the no-fault system will not be hers to rely on. She will have to prove her case in a fault-based system, so have to prove duty, breach, causation, and harm, and that's a higher bar than what she would have to prove in the Workers' Occupational Diseases Act context. Another part of defendants' argument here is that Section 1F, these timing provisions under the Act, apply to all liability in Illinois law, so that their statute of repose defense protects them from any type of liability they could have with regard to these exposures that their employees went through, and that's just not our understanding of the language of the statute. Section 1F states that no compensation shall be payable after the timing provision has expired, and Section 60, which isn't at issue in this case, but which this court has also described as a timing provision, states that applications for compensation cannot be filed after certain dates. We would submit that that language about compensation refers to workers' compensation, compensation under the Act. It doesn't apply to liability in any system in any court whatsoever. So again, the Section 1F is still protecting employers in this workers' compensation system, but we would argue that it is no longer protecting, it never protected employers in the tort system, and I think that that is an important distinction to draw because our case that we cite in our brief, Hayashi v. Illinois Department of Professional and Financial Regulation, which states that there's no due process problem when the original repose provision has not been changed or removed. Here, we submit that that repose provision has not been changed or removed. I'd like to quickly note, with regard to Hayashi, counsel cites Wilson v. Allscale in the reply brief. Wilson hasn't been frequently discussed by this court. It was decided in 1981, but in fact, the last time Wilson was cited by this court was in Hayashi v. Illinois Department of Financial and Professional Regulation, and the sentence immediately preceding the court's statement that there's no due process problem when the original repose provision has not been changed or removed. So here, we would advise the court, in case they see any tension between Wilson v. Allscale and Hayashi, to rely on its more recent 2014 case law as opposed to its 1981 case law. I just would also just like to submit that in this case, this court sort of raised a red flag as to the harsh results that could occur in a case like this one, where there is an employee with a latent disease that cannot bring their case in front of any venue whatsoever. This court may have suggested that that was not fair, and that there was nothing that the court could do to resolve that problem. And as my co-counsel stated, the General Assembly took action and specifically considered the due process vested interests of employers and decided not to adjust at all the timing provisions of this act. Instead, they went after the exclusive family provisions. And to the extent that defendants here are concerned that their rights are violated, they will have to go into court. They have not had chances to insure themselves. First, they don't have a vested right in the mere continuance of the law. And second, they can do in this case what plaintiffs and employees did in FOLTA. If they do not like the balance that the General Assembly has struck, they can go to the General Assembly and ask for change. If the court has no questions for me, I'd like to quickly wrap up and say that for the reasons stated, this court should answer the third certified question in the negative. No, the application of Section 1.1 of the Workers' Occupational Diseases Act to pass conduct does not offend Illinois' due process guarantee. Thank you very much, Your Honors, for your time. Thank you very much. Counsel's reply. Justice Tice, I have read, reread, and reread again the FOLTA opinion many times. Nowhere in there did I see this court begging, requesting, demanding the legislature to step in. The legislature did that on its own. This court merely called the balls and strikes with regards to the statute that was in front of it. In terms of the harsh result, every statute of repose in Illinois is a harsh result. When you look at the cases, and we cited many of them in our brief and the various footnotes, that every time it's looked at, it's called a harsh result because it cuts off a claim before it accrues. So this isn't the only statute of repose that exists. In fact, there's a six-year statute of repose for legal malpractice. If the Illinois legislature were to wake up one day and go, that's a harsh result, we're going to give clients or even third parties who fall under the six-year statute of repose where your claim is filed, we're going to give you a right for binding arbitration against those lawyers. Do you think the Illinois Trial Lawyers Association would be filing an amicus in support of that? I don't think so. There are harsh results. It is a matter of cutting off stale claims, which is exactly what was meant by the Illinois legislature when it passed those more than 50 years ago. With regards to counsel's statement that there's no new cause of action based upon the exception 1.1, that's simply a fallacy. They now have a civil right with unlimited damages, prejudgment interest, and the potential for punitive damages. Where is that in the grand bargain when employers gave up rights for no fault in order for a limited statutorily defined schedule of compensation? It's not. The argument is that's a legislative decision. It's not a court decision. The legislature, the whole idea of the grand bargain is balancing of all these different interests. That happens across the street, not here. And they can do that when you're not impacting accrued rights. And with regards to those accrued rights, I would point the court to the exact language of 1.F in conjunction with the exclusive remedy provisions, which this court in Fulta found 6C and the exclusive remedy provisions to be intertwined. You can't read one without the other. In terms of Section 1.F, counsel was right. It says no compensation shall be payable for or on account of any occupational disease, and then goes on. Section 11 says the compensation herein provided shall be the full, complete, and only measure of damage. There's that word compensation again. 1.F says no compensation. So it's determined that the compensation hereunder shall be zero. What does 5A say? It says there is no common law or statutory right to recover compensation for an account of injuries hereunder. Again, those two interact so that in 1976, Goodrich was assured there would be no claim of any kind with regards to vinyl chloride claimed exposures from 1966 to 1974. Those operate together. They accrue at the latest in 1976 that there could be no claim. Does the employer have a vested right in the exclusivity provision when the employee crosses the threshold? Yes, they do. The question is, does it get wielded? Does the shield get wielded? It exists, but does it get wielded? Every affirmative defense, I don't care whether it's statute of repose, statute of limitations, payment, all of those are affirmative defenses, but they exist earlier. The question is, do they get raised? Do they get pled and proved? All affirmative defenses do. Statute of repose has to be proved and pled. Statute of limitations proved and pled, just like an affirmative defense of exclusivity. But the employer's rights, that's what we have to look at here, not the employee's rights. This is a case about the legislature stripping employer rights for conduct from the 1970s. That's what this is about. And so are those stripped away because they accrued in 1976? The statute on statutes is clear in terms of you cannot take away an accrued right. And that's why Perry, and by the way, Perry rejected Hayashi rationale in its analysis. Your Honor raised the issue of floodgates and what the impact might be, and that was talked about as potentially speculative. Since 1970s, businesses have been sold. Assets have been transferred. Companies have left the state. So all of those are now subject to this liability if this court rules as the plaintiff would like. Isn't that a policy decision that we don't make, that we shouldn't be contemplating? You are being asked to do that under 1F and then apply the 1.1 exception to open that floodgate. You are being asked to interpret 1F as being a paperless tiger to do that because they say, oh, it's only the exclusivity provision that's benefacted. Well, the exclusivity here accrued. It accrued out of the employment relationship, just as this court has said that contract rights accrue at the time of the contract. They don't accrue at the time the lawsuit is filed and you raise payment or you raise a contract provision as a defense. They accrue at the time the contract was entered into, and here we have a contract between an employee and an employer under the workers' comp and the ODA. That, when it's accrued, cannot be taken away by the legislature. Section 4 in the statute on statutes is clear. 125 years of this court's decisions are clear. You can't do that. Are there just causes that the legislature was trying to correct? Yes. In the legislative history, the vested rights was pointed out, and the legislature said, well, we'll just try to craft around it. They were too cute by half in so doing because nobody in the legislative record ever mentioned Section 4 of the statute on statutes, that they can't do what they're doing. And again, we're asking this court to abide by 125 years of precedent, answer no to question 1, find that Section 4 of the statute on statutes, the temporal application is prospective only, not taking away any accrued right, and with regards to the due process issues, yes, it does violate them. Because in 1976, Goodrich, before it ever sold to GEON, before GEON ever merged to become Poly 1, before Poly 1 ever merged to become Aviant, and we see how corporate transactions go, in 1976, Goodrich was assured under Illinois law that it would never, ever face a claim, whether in the ODA or in civil case, for an exposure to vinyl chloride that ended in 1974. Thank you. If there's any other questions, I guess I have a minute or two. No? Thank you very much for everyone's very helpful argument. Obviously, there are many issues in this case we were able to address and hear on some of them, but there are very many complex issues, and all of your presentations have been very helpful to the court. So, thank you. This case, Agenda Number 8, Number 130509, Candace Martin, et cetera, versus Goodrich Corporation, et cetera, will be taken under advisory.